# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ORFIN, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**AEYE, INC.,**<br><br>Defendant. | Civil Action No. 1:21-cv-560-CFC |

## DECLARATION OF JORDAN GREEN IN SUPPORT OF AEYE'S MOTION TO DISMISS

I, Jordan Greene, declare:

1. I am the Co-Founder and Vice President of Corporate Development at AEye, Inc.

2. AEye develops and sells AI-driven LiDAR systems for vehicles. These systems are designed to facilitate vehicle autonomy and save lives. AEye is a Delaware corporation headquartered in California.

3. In 2020, I discussed in various emails and other communications an investment by Orfin, LLC in AEye's convertible note. On November 30, 2020, I emailed a copy of a convertible note Purchase Agreement to Adam Finkel. Attached as Exhibit A to this Declaration is a true and correct excerpted copy of the Purchase Agreement.

4. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 13 day of July 2021 at Tiburon, California.

_____
Jordan Greene

# EXHIBIT A

# CONVERTIBLE EQUITY PURCHASE AGREEMENT

This Convertible Equity Purchase Agreement, dated as of February 26, 2020, as amended and restated on August 3, 2020 and further amended and restated on September 15, 2020 (the "Amendment Date" and amended agreement, this "Agreement"), is entered into by and among AEye, Inc., a Delaware corporation (the "Company"), and the persons and entities listed on the Schedule of Investors attached here to as **Exhibit A** (each an "Investor" and, collectively, the "Investors").

## RECITALS

A.   On the terms and subject to the conditions set forth herein, each Investor is willing to purchase from the Company, and the Company is willing to sell to such Investor, a convertible equity instrument in the principal amount set forth opposite such Investor's name on **Exhibit A** hereto.

B.   Capitalized terms not otherwise defined herein shall have the meaning set forth in the form of Instrument (as defined below) attached hereto as **Exhibit B**.

## AGREEMENT

NOW THEREFORE, in consideration of the foregoing, and the representations, warranties, and conditions set forth below, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **The Instruments.**

    (a) *Issuance of Instruments*.  Subject to all of the terms and conditions hereof, the Company agrees to issue and sell to each of the Investors, and each of the Investors severally agrees to purchase, a convertible equity instrument in the amended and restated form substantially as set forth as **Exhibit B** hereto (each, an "Instrument" and, collectively, the "Instruments", which amendments shall apply to all instruments issued before or after the Amendment Date) in the principal amount set forth opposite each such Investor's name on **Exhibit A** hereto.  All obligations of the Investors under this Agreement and the Instruments are several and not joint.  The aggregate principal amount for all Instruments issued hereunder shall not exceed Twenty-Five Million Dollars ($25,000,000) (the "Total Amount").

    (b) *Closings*. The sale and purchase of the Instruments shall take place at one or more closings (each, a "Closing" and collectively, the "Closings") to be held at such place and time as the Company and the Investors may determine (the "Closing Dates"), with the initial Closing to occur on the date of this Agreement (the "Initial Closing").  In the event that the Total Amount is not sold at the Initial Closing, one or more additional investors reasonably acceptable to the Company and a Majority in Interest of Investors ("Additional Investors") agree by execution of counterpart(s) of this Agreement to purchase additional Instrument(s) hereunder, the Company may, until the Company has issued and sold Instruments having an aggregate principal amount equal to the Total Amount, hold additional closing(s) (each such Closing, an "Additional Closing") to effect the sale and purchase of such Instrument(s) to such Additional Investor(s) at such place and time as the Company and such Additional Investor(s) may determine.  The terms of the transactions consummated at any such Additional Closing shall be identical to the terms of the transactions consummated at the Initial Closing, excepting the date of issuance of such Instrument(s).  Upon consummation of any such Additional Closing, any such Additional Investor shall thereafter be deemed an "Investor" for all purposes hereunder, and the Company shall amend the Schedule of Investors attached hereto as **Exhibit A** to include the purchase of Instrument(s) by the Additional Investor(s) at such Additional Closing.

(c) *Delivery*.  At each Closing, the Company will deliver to each of the Investors participating in such Closing the Instrument to be purchased by such Investor, against receipt by the Company of the corresponding purchase price.  Each of the Instruments will be registered in such Investor's name in the Company's records.

(d) *Use of Proceeds*. The proceeds of the sale and issuance of the Instruments shall be used for general corporate purposes.

(e) *Amended Notes*.  Investors that received an Instrument prior to the Amendment Date may request, and the Company shall issue, an amended Instrument reflecting any amendments to such Instrument since the Amendment Date.

2.     **Representations and Warranties of the Company.** The Company represents and warrants to each Investor as of the Closing the Investor participates in that, except as set forth in **Exhibit C** hereto (the "Disclosure Schedule"):

(a) *Due Incorporation, Qualification, etc*. The Company (i) is duly organized, validly existing and in good standing under the laws of the State of Delaware; (ii) has the power and authority to own, lease and operate its properties and carry on its business as now conducted; and (iii) is duly qualified, licensed to do business and in good standing as a foreign corporation in each jurisdiction where the failure to be so qualified or licensed could reasonably be expected to have a material adverse effect on the Company.

(b) *Financial Statements*.  The financial statements of the Company that have been delivered to each Investor prior to the Closing have been prepared in accordance with generally accepted accounting principles applied on a consistent basis throughout the periods indicated, except as disclosed therein, and present fairly the financial condition and position of the Company as of their respective dates; *provided, however*, that any interim financial statements are subject to normal recurring year-end adjustments (which are not expected to be material either individually or in the aggregate), and the financial statements do not contain the footnotes required under generally accepted accounting principles.

(c) *Authority*. The execution, delivery and performance by the Company of each Transaction Document (as defined below) and the consummation of the transactions contemplated thereby (i) are within the power of the Company and (ii) have been duly authorized by all necessary actions on the part of the Company.

(d) *Enforceability*. Each Transaction Document executed, or to be executed, by the Company has been, or will be, duly executed and delivered by the Company, as the case may be, and constitutes, or will constitute, a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(e) *Non-Contravention*. The execution and delivery by the Company of the Transaction Documents and the performance and consummation of the transactions contemplated thereby do not and will not (i) violate the Company's Certificate of Incorporation or Bylaws (as amended, the "Charter Documents"), or any material judgment, order, writ, decree, statute, rule or regulation applicable to the Company; (ii) violate any provision of, or result in the breach or the acceleration of, or entitle any other Person to accelerate (whether after the giving of notice or lapse of time or both), any material mortgage, indenture, agreement, instrument or contract to which the Company is a party or by which it is bound; or (iii) result in the creation or imposition of any lien upon any property, asset or revenue of the Company

2

(other than any lien arising under the Transaction Documents) or the suspension, revocation, impairment, forfeiture, or nonrenewal of any material permit, license, authorization or approval applicable to the Company, its business or operations, or any of its assets or properties.

(f) *Approvals*.  No consent, approval, order or authorization of, or registration, declaration or filing with, any governmental authority or other Person (including, without limitation, the shareholders of any Person) is required in connection with the execution and delivery of the Transaction Documents and the performance and consummation of the transactions contemplated thereby, other than such as have been obtained and remain in full force and effect and other than such qualifications or filings under applicable securities laws as may be required in connection with the transactions contemplated by the Transaction Documents.

(g) *No Violation or Default*.  The Company is not in violation of or in default with respect to (i) its Charter Documents or other organizational documents or any material judgment, order, writ, decree, statute, rule or regulation applicable to the Company; or (ii) any material mortgage, indenture, agreement, instrument or contract to which the Company is a party or by which it is bound (nor is there any waiver in effect which, if not in effect, would result in such a violation or default).

(h) *Litigation*.  No actions (including, without limitation, derivative actions), suits, proceedings or investigations are pending or, to the knowledge of the Company, threatened in writing against the Company at law or in equity in any court or before any other governmental authority that (i) if adversely determined, would (alone or in the aggregate) result in a material liability; or (ii) seeks to enjoin, either directly or indirectly, the execution, delivery or performance by the Company of the Transaction Documents or the transactions contemplated thereby.

(i) *Intellectual Property*.  To its knowledge, the Company owns or possesses or can obtain on commercially reasonable terms sufficient legal rights to all patents, trademarks, service marks, trade names, copyrights, trade secrets, licenses, information, processes and other intellectual property rights necessary for its business as now conducted and as proposed to be conducted, the lack of which could reasonably be expected to have a material adverse effect on the Company, without any known conflict with, or infringement of, the rights of others.

(j) *Accuracy of Information Furnished*.  None of the Transaction Documents or exhibits thereto furnished to Investors by or on behalf of the Company in connection with the transactions contemplated by the Transaction Documents contain any untrue statement of a material fact or omits to state a material fact necessary to make the statements herein or therein, in light of the circumstances under which they were made, not misleading.  The Company does not represent or warrant that it will achieve any financial projections provided to the Investors and represents only that such projections were prepared in good faith.

(k) *No Bad Actors*.  None of the Company, any of its predecessors, any affiliated issuer, any director, executive officer, other officer of the Company participating in the offering of the Instruments, any beneficial owner of 20% or more of the Company's outstanding voting equity securities, calculated on the basis of voting power, nor any promoter (as that term is defined in Rule 405 under the Securities Act) connected with the Company in any capacity (each, an "Issuer Covered Person") is subject to any of the "Bad Actor" disqualifications described in Securities Act Rule 506(d)(1) subsections (i) through (viii) (each a "Disqualification Event").  The Company has exercised reasonable care to determine whether any Issuer Covered Person is subject to a Disqualification Event and the Company has complied, to the extent applicable, with its disclosure obligations under Rule 506(e).

(l) *Binding Obligation*. The Company has full legal capacity, power and authority to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement and each Instrument issued by the Company hereunder constitutes a valid and binding obligation of the Company, enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

**3.     Representations and Warranties of Investors.** Each Investor, for that Investor alone, represents and warrants to the Company upon the acquisition of an Instrument as follows (provided that nothing in this **Section 3** limits or modifies the representations and warranties of the Company in **Section 2** of this Agreement or the right of the Investors to rely thereon):

(a) *Binding Obligation*. Such Investor has full legal capacity, power and authority to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement constitutes valid and binding obligations of such Investor, enforceable in accordance with their terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

(b) *Securities Law Compliance*. Such Investor has been advised that the Instruments and the underlying securities have not been registered under the Securities Act, or any state securities laws and, therefore, cannot be resold unless they are registered under the Securities Act and applicable state securities laws or unless an exemption from such registration requirements is available. Such Investor is aware that the Company is under no obligation to effect any such registration with respect to the Instruments or the underlying securities or to file for or comply with any exemption from registration. Such Investor has not been formed solely for the purpose of making this investment and is purchasing the Instruments to be acquired by such Investor hereunder for its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and Investor has no present intention of selling, granting any participation in, or otherwise distributing the same. Such Investor has such knowledge and experience in financial and business matters that such Investor is capable of evaluating the merits and risks of such investment, is able to incur a complete loss of such investment without impairing such Investor's financial condition and is able to bear the economic risk of such investment for an indefinite period of time. Such Investor is an accredited investor as such term is defined in Rule 501 of Regulation D under the Securities Act and shall submit to the Company such further assurances of such status as may be reasonably requested by the Company. The residency of the Investor (or, in the case of a partnership or corporation, such entity's principal place of business) is correctly set forth beneath such Investor's name on **Exhibit A** hereto.  Neither such Investor nor any affiliate of such Investor that could stand as the beneficial owner of the Instrument purchased by such Investor is subject to any Disqualification Event.

(c) *Access to Information*. Such Investor has received and read the financial statements and has had an opportunity to discuss the Company's business, management and financial affairs with directors, officers and management of the Company and has had the opportunity to review the Company's operations and facilities.  Such Investor has also had the opportunity to ask questions of and receive answers from, the Company and its management regarding the terms and conditions of this investment.

(d) *Tax Advisors*. Such Investor has reviewed with its own tax advisors the U.S. federal, state and local and non-U.S. tax consequences of this investment and the transactions contemplated by this Agreement. With respect to such matters, such Investor relies solely on any such advisors and not on any statements or representations of the Company or any of its agents, written or oral. Such Investor understands that it (and not the Company) shall be responsible for its own tax liability that may arise as a result of this investment and the transactions contemplated by this Agreement.

4

WEST\291733676.2

(e) *Non-United States Investors*. Each Investor who is a Non-U.S. person (as that term is defined in Regulation S of the Securities Act, "Regulation S") hereby represents and warrants to the Company as follows that such Investor is aware of the requirements of Regulation S and the restrictions imposed thereby on the issuance of any Instruments and the shares issuable upon conversion of any Instrument and acknowledges and agrees that the Company and the Investor will abide by the rules provided therein. Each Investor that is not a United States person also hereby represents that the Investor is satisfied as to the full observance of the laws of any such Investor's jurisdiction in connection with any invitation to purchase Instruments or shares issuable upon conversion thereof and such Investor's purchase and payment for the Instruments and the Investor's continued beneficial ownership of the Instruments or any shares issuable upon conversion thereof will not violate any applicable securities or other laws of the such Investor's country or state of jurisdiction.

4. **Conditions to Closing of the Investors.** Each Investor's obligations at the Closing are subject to the fulfillment, on or prior to the respective Closing Date, of all of the following conditions, any of which may be waived in whole or in part by such Investor:

(a) *Representations and Warranties*. The representations and warranties made by the Company in *Section 2* hereof, as supplemented by the Disclosure Schedule, shall have been true and correct when made, and shall be true and correct as of the Closing Date.

(b) *Governmental Approvals and Filings*. Except for any notices required or permitted to be filed after the Closing Date with certain federal and state securities commissions, the Company shall have obtained all governmental approvals required in connection with the lawful sale and issuance of the Instruments.

(c) *Legal Requirements*. At the Closing, the sale and issuance by the Company, and the purchase by the Investors, of the Instruments shall be legally permitted by all laws and regulations to which the Investors or the Company are subject.

(d) *Proceedings and Documents*. All corporate and other proceedings in connection with the transactions contemplated at the Closing and all documents and instruments incident to such transactions shall be reasonably satisfactory in substance and form to the Investors.

(e) *Transaction Documents*. The Company shall have duly executed and delivered to the Investors the following documents (the "Transaction Documents"):

   (i) this Agreement; and

   (ii) each Instrument issued hereunder.

5. **Conditions to Obligations of the Company**. The Company's obligation to issue and sell the Instruments at the Closing is subject to the fulfillment, on or prior to the Closing Date, of the following conditions, any of which may be waived in whole or in part by the Company:

(a) *Representations and Warranties*. The representations and warranties made by the applicable Investors in Section 3 hereof shall be true and correct when made, and shall be true and correct on the Closing Date.

(b) *Governmental Approvals and Filings*. Except for any notices required or permitted to be filed after the Closing Date with certain federal and state securities commissions, the Company shall

have obtained all governmental approvals required in connection with the lawful sale and issuance of the Instruments.

(c) *Legal Requirements*. At the Closing, the sale and issuance by the Company, and the purchase by the applicable Investors, of the Instruments shall be legally permitted by all laws and regulations to which such Investors or the Company are subject.

(d) *Purchase Price*. Each Investor shall have delivered to the Company the Purchase Price in respect of the Instrument being purchased by such Investor referenced in **Section 1(b)** hereof.

**6.     Miscellaneous.**

(a) *Waivers and Amendments*. Any provision of this Agreement and the Instruments may be amended, waived or modified only upon the written consent of the Company and a Majority in Interest of Investors; provided, however, that no such amendment, waiver or modification shall, without the affected Investor's written consent, reduce the principal amount of any Instrument, increase the Conversion Price applicable to any Instrument, or otherwise reduce the amount of cash payable to any Investor upon conversion of the Instrument pursuant to Section 2(b), (c) or (d) thereof, and any amendment, modification, or waiver of this Agreement or the Instruments that does not apply to all Investors in the same fashion shall require the written consent of each Investor affected thereby.  Any amendment or waiver effected in accordance with this paragraph shall be binding upon all of the parties hereto.  Notwithstanding the foregoing, this Agreement may be amended in connection with Additional Closings as expressly contemplated by Section 1(b) hereof.

(b) *Governing Law; Consent to Jurisdiction; Waiver of Jury Trial*. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its principles of conflicts of laws.  Each of the parties hereto irrevocably submits to the exclusive jurisdiction of the courts of the State of Delaware located in Newcastle County and the U.S. District Court for the District of Delaware for the purpose of any suit, action, proceeding or judgment relating to or arising out of this Agreement and the transactions contemplated hereby.  Service of process in connection with any such suit, action or proceeding may be served on each party hereto anywhere in the world by the same methods as are specified for the giving of notices under this Agreement.  Each of the parties hereto irrevocably consents to the jurisdiction of any such court in any such suit, action or proceeding and to the laying of venue in such court.  Each party hereto irrevocably waives any objection to the laying of venue of any such suit, action or proceeding brought in such courts and irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

EACH PARTY HERETO WAIVES ANY RIGHT TO REQUEST A TRIAL BY JURY IN ANY LITIGATION WITH RESPECT TO THIS AGREEMENT AND REPRESENTS THAT COUNSEL HAS BEEN CONSULTED SPECIFICALLY AS TO THIS WAIVER.

(c) *Survival.* The representations, warranties, covenants and agreements made herein shall survive the execution and delivery of this Agreement.

(d) *Successors and Assigns*. Subject to the restrictions on transfer described in Sections 6(e) and 6(f) below, the rights and obligations of the Company and the Investors shall be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties.

(e) *Registration, Transfer and Replacement of the Instruments*. The Instruments issuable under this Agreement shall be registered Instruments. The Company will keep, at its principal executive office, books for the registration and registration of transfer of the Instruments. Prior to presentation of

any Instrument for registration of transfer, the Company shall treat the Person in whose name such Instrument is registered as the owner and holder of such Instrument for all purposes whatsoever, whether or not such Instrument shall be overdue, and the Company shall not be affected by notice to the contrary. Subject to any restrictions on or conditions to transfer set forth in any Instrument, the holder of any Instrument, at its option, may in person or by duly authorized attorney surrender the same for exchange at the Company's chief executive office, and promptly thereafter and at the Company's expense, except as provided below, receive in exchange therefor one or more new Instrument(s), each in the principal requested by such holder dated the date of the Instrument so surrendered and registered in the name of such Person or Persons as shall have been designated in writing by such holder or its attorney for the same principal amount as the then unpaid principal amount of the Instrument so surrendered. Upon receipt by the Company of evidence reasonably satisfactory to it of the ownership of and the loss, theft, destruction or mutilation of any Instrument and (a) in the case of loss, theft or destruction, of indemnity reasonably satisfactory to it; or (b) in the case of mutilation, upon surrender thereof, the Company, at its expense, will execute and deliver in lieu thereof a new Instrument executed in the same manner as the Instrument being replaced, in the same principal amount as the unpaid principal amount of such Instrument and dated the date of such Instrument.

(f) *Assignment by the Company*. The rights, interests or obligations hereunder may not be assigned, by operation of law or otherwise, in whole or in part, by the Company without the prior written consent of a Majority in Interest of Investors.

(g) *Entire Agreement*. This Agreement together with the other Transaction Documents constitute and contain the entire agreement among the Company and Investors and supersede any and all prior agreements, negotiations, correspondence, understandings and communications among the parties, whether written or oral, respecting the subject matter hereof.

(h) *Notices*. All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall be in writing and faxed, mailed or delivered to each party as follows: (i) if to an Investor, at such Investor's address or facsimile number set forth in the Schedule of Investors attached as **Exhibit A**, or at such other address as such Investor shall have furnished the Company in writing, or (ii) if to the Company, at AEye, Inc., 5700 Stoneridge Dr., Suite 102, Pleasanton, CA 94588, with a copy to Jonathan Axelrad, DLA Piper LLP (US), 555 Mission St., Suite 2400, San Francisco, California 94105, or at such other address or email as the Company shall have furnished to the Investors in writing. All such notices and communications will be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one business day after being delivered by e-mail or facsimile, (iv) one business day after being deposited with an overnight courier service of recognized standing or (v) four days after being deposited in the U.S. mail, first class with postage prepaid.

(i) *Instruments are to be treated as Equity*. The parties hereto hereby acknowledge and agree that for United States federal and state income tax purposes the Instruments are, and at all times have been, more properly characterized as equity. Accordingly, the Company and the Investors agree to treat the Instruments as equity for all United States federal and state income tax purposes (including, without limitation, on their respective tax returns or other informational statements). For the avoidance of doubt, the Company hereby agrees that, with regard specifically to the rule set forth in Section 385 of the Internal Revenue Code of 1986, as amended, the Company will treat the Instruments as equity as of the time of issuance.

(j) *Expenses*. The Company and each Investor shall pay its own fees and expenses, including attorneys' fees in connection with the preparation, execution and delivery of this Agreement and the other Transaction Documents.

(k) *Separability of Agreements; Severability of this Agreement.* The Company's agreement with each of the Investors is a separate agreement and the sale of the Instruments to each of the Investors is a separate sale. Unless otherwise expressly provided herein, the rights of each Investor hereunder are several rights, not rights jointly held with any of the other Investors. Any invalidity, illegality or limitation on the enforceability of the Agreement or any part thereof, by any Investor whether arising by reason of the law of the respective Investor's domicile or otherwise, shall in no way affect or impair the validity, legality or enforceability of this Agreement with respect to other Investors. If any provision of this Agreement shall be judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(l) *Counterparts*. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. Facsimile copies of signed signature pages will be deemed binding originals.

(*Signature Pages Follow*)

The parties have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date and year first written above.

**COMPANY:**

**AEYE, INC.**
a Delaware corporation

By: _/s/ Luis Dussan_
Name: Luis Dussan
Title: CEO
Date: 9/15/2020